**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| EILEEN M. RILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-00888-JMB |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Eileen M. Riley for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion, the Court finds that it should be granted. *See* 28 U.S.C. § 1915(a)(1). Additionally, for the reasons discussed below, the Court will dismiss this action without prejudice.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir.

2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who has filed a civil action titled "Petition in Violation of Life, Liberty and Property." (Docket No. 1). She names the United States as the sole defendant. (Docket No. 1 at 1).  The complaint is typewritten and not on a Court-provided form.

In the "History" section of her complaint, plaintiff begins by stating that she is submitting "this petition for relief of distress for the grievances already detailed" in two prior cases filed in

2

the United States District Court for the Eastern District of Missouri.[1] According to plaintiff, those grievances continue to this day, and include being "subjected to systematic, arbitrary and capricious discriminatory actions…in violation of the constitution and local, state and federal laws." She further states that:

> Policies and procedures were implemented and executed with the intent to [eradicate] the virtue of religion, specifically the moral truths necessary for true human development and the common good. Defendants maintained compliance and cooperation with employees and partners as a condition of employment with real or perceived personal gain to individuals. Plaintiff expected justice and sought it repeatedly but it was denied. Defendants had reasonable knowledge that plaintiff would not enjoy any support from family, friends, colleagues or neighbors, namely, what we were all taught, 'What men and women will do under certain conditions.'

Plaintiff asserts that defendants had or should have had knowledge about "ongoing unlawful actions" that disregarded her well-being. She then notes – confusingly – that she was diagnosed with breast cancer in 2005, had a lumpectomy in 2006, and her "last gynecological exam" in October 2007, where an EKG was performed. (Docket No. 1 at 1-2). During that final examination, plaintiff asked the doctor why she received an EKG, but received no answer. (Docket No. 1 at 2). Two months later, she states that she "was terminated," though she provides no specifics. In 2017, plaintiff's cancer returned, but she explains that seeking "health care treatment as a ward of the state or tied to any terms or conditions other than sound standard of care is insanity and…unlawful."

Plaintiff concludes the "History" section of her complaint by observing that she is eligible to retire with Social Security benefits, and that she paid off her student loans in 2004, after receiving an inheritance.

---

[1] These cases are *Riley v. US Bancorp, et al.*, No. 4:08-cv-206-ERW (E.D. Mo.) (employment discrimination complaint dismissed on August 26, 2009); and *Riley v. FedEx Corporation, et al.*, No. 4:17-cv-2192-RLW (E.D. Mo.) (employment discrimination complaint dismissed on February 4, 2019).

3

In the "Current Adverse Actions" section of her complaint, plaintiff appears to reach the substance of this action. She states that in "April/May 2018," she "completed an application for an apartment and was denied." Plaintiff was then "referred to Dutchtown South Community Corporation (DSCC)…a non-profit organization with a mission" of "[a]dvancing [neighborhood] vitality through community empowerment, housing stabilization [and] real estate development." She states that DSCC approved her application, and she entered into a lease agreement with them. (Docket No. 1 at 3).

From 2018 to the present, plaintiff has lived at an apartment rented to her by DSCC. However, DSCC has since sought and received a judgment of eviction. In response to being evicted, plaintiff levies a number of complaints against DSCC.

To begin, plaintiff states that "DSCC had or should have had knowledge of… plaintiff's adverse actions and chose to continue to harass and create undue[,] unlawful burdens" for her.

Plaintiff also alleges that DSCC "repeatedly violated" the lease agreement in at least three ways. First, she accuses DSCC of failing "to maintain strict care of custody and keys," thereby violating her "rights to privacy, peace and tranquility of her apartment." This occurred when "DSCC permitted volunteers and employees to enter without notice," in contravention to the right of entry clause in the lease agreement.

Second, "after the previous unlawful entry discussions," plaintiff claims that "DSCC entered into a fallacious contract with Rottler Pest to continue the unlawful entry." She contends that there was no "evidence of an infestation of pests of any kind," meaning that "neither party had a legitimate business reason for the contract."

Third, plaintiff asserts that "DSCC failed to maintain [a] functioning air conditioner and refused a new one [despite] reasonable knowledge that it did not cool the apartment below 80

4

degrees." She notes that DSCC has had "approximately five [maintenance] men in the four years of [her] tenancy," and that she "was required to remove the units and re-install them without ever being cleaned." (Docket No. 1 at 3-4).

Beyond the alleged violations of the lease agreement, plaintiff states that when she was cleaning her apartment, she "discovered a pile of cooked pasta under the stove top that could have only gotten there intentionally." (Docket No. 1 at 4). This led her to believe that DSCC somehow created the mess "to withhold the security deposit upon termination of the lease." Plaintiff states that she had pictures, "but they have all been deleted."

On June 16, 2021, plaintiff states that she quit her job due to COVID-19. On March 1, 2022, DSCC mailed her a "notice of non-renewal of month to month tenancy." On April 20, 2022, plaintiff purportedly "filed another request for relief in the US District Court referenced above."

On April 25, 2022, plaintiff states that she "sought housing at Grand South Apartments" because she had "no other options available."

On August 9, 2022, DSCC obtained judgment against plaintiff for unlawful detainer in the Circuit Court of the City of St. Louis. She identifies the case as No. 2222-AC05014[2]. Plaintiff notes that DSCC was also awarded damages.

---

[2] The Court has reviewed this case on Case.net, Missouri's online case management system, and will take judicial notice of this public record. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007) (explaining that district court may take judicial notice of public state records); and *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (stating that courts "may take judicial notice of judicial opinions and public records"). According to this review, DSCC filed a petition in unlawful detainer on May 10, 2022, accusing plaintiff of retaining possession of the premises at 3224 Meramec Street, Apartment 7, even after demand for delivery of possession had been made. *Dutchtown South Community Corp v. Riley*, No. 2222-AC05014 (22nd Jud. Cir., City of St. Louis). Plaintiff was served, and a bench trial occurred on August 9, 2022, which plaintiff attended. The circuit court determined that plaintiff unlawfully detained the premises, and was assessed $900 in damages. DSCC was awarded restitution of the property. On August 22, 2022, an order for eviction was issued.

Attached to the complaint are a number of exhibits, which the Court has reviewed and will treat as part of the pleadings.[3] These exhibits include a TransUnion credit report (Docket No. 1-3); the lease agreement between plaintiff and DSCC (Docket No. 1-4); the judgment against plaintiff in *Dutchtown South Community Corp v. Riley*, No. 2222-AC05014 (22nd Jud. Cir., City of St. Louis) (Docket No. 1-5 at 1); an email from a caseworker at Guardian Angel Settlement Association (Docket No. 1-5 at 2); the "Notice of Non-Renewal of Month to Month Tenancy" sent to plaintiff by DSCC on March 1, 2022, notifying plaintiff that she must vacate the premises by April 30, 2022 (Docket No. 1-5 at 3); an email string between plaintiff and an individual named Anne Kirwan, apparently regarding a new apartment (Docket No. 1-6); an email string between plaintiff and Grand South Senior regarding her employment and the return of a deposit check (Docket No. 1-7); an email string between plaintiff and Grand South Senior regarding employment verification and the withdrawal of her application (Docket No. 1-8); and plaintiff's June 22, 2022 Social Security statement (Docket No. 1-9).

Based on these facts, plaintiff seeks unspecified compensatory, punitive, and exemplary damages. (Docket No. 1 at 5).

**Discussion**

Plaintiff is a self-represented litigant who has filed a civil action against the United States, apparently based on her eviction from her apartment. Because she is proceed in forma pauperis, the Court has reviewed her complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

---

[3] *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (stating that "while ordinarily, only the facts alleged in the complaint are considered in determining whether it states a claim, materials attached to the complaint as exhibits may be considered in construing the sufficiency of the complaint"); and *Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

### A. Lack of Subject Matter Jurisdiction for Claim Against United States

Subject matter jurisdiction refers to a court's power to decide a certain class of cases. *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 2006). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). *See also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute"). The presence of subject matter jurisdiction is a threshold requirement that must be assured in every federal case. *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990). *See also Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("The threshold requirement in every federal case is jurisdiction and we have admonished the district court to be attentive to a satisfaction of jurisdictional requirements in all cases").

Because jurisdiction is a threshold requirement, the issue of subject matter jurisdiction may be raised at any time, by any party or the court. *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982 (8th Cir. 2009). *See also City of Kansas City, Mo. v. Yarco Co., Inc.*, 625 F.3d 1038, 1040 (8th Cir. 2010) ("Federal courts have an independent duty to determine subject matter jurisdiction, even where the matter is raised for the first time on appeal and on the court's own motion"). The burden of proving subject matter jurisdiction belongs to the plaintiff. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

Here, plaintiff has named the United States as the sole defendant. "Generally, sovereign immunity prevents the United States from being sued without its consent." *Iverson v. United States*, 973 F.3d 843, 846 (8th Cir. 2020). *See also Hinsley v. Standing Rock Child Protective Services*, 516 F.3d 668, 671 (8th Cir. 2008) (stating that "[i]t is well settled that the United States

may not be sued without its consent"). "Sovereign immunity is jurisdictional in nature," and "shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

In order to sue the United States, a plaintiff must show a waiver of sovereign immunity. *See V S Ltd. Partnership*, 235 F.3d at 1112. *See also Great Rivers Habitat Alliance v. Federal Emergency Management Agency*, 615 F.3d 985, 988 (8th Cir. 2010) (explaining that the United States and its agencies enjoy "immunity from suit, absent a waiver"). Such a waiver must be "unequivocally expressed" and "cannot be implied." *See United States v. King*, 395 U.S. 1, 4 (1969). *See also College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 682 (1999) (stating that "in the context of federal sovereign immunity…it is well established that waivers are not implied").

Plaintiff has not asserted a waiver of sovereign immunity by the United States, and none is apparent on the face of the complaint. Though she mentions violations of "life, liberty and property," any claim for an alleged constitutional violation under 42 U.S.C. § 1983 does not apply to the federal government. *See Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (explaining that under § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of *state* law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right") (emphasis added). Meanwhile, under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 389 (1971), plaintiff can bring an action "almost identical" to § 1983 against federal officials. *See Gordon v. Hansen*, 168 F.3d 1109, 1113 (8th Cir. 1999). However, "[i]t is well settled that a *Bivens* action cannot be prosecuted against the United States and its agencies because of sovereign immunity." *See Buford v. Runyon*, 160 F.3d 1199, 1203 (8th Cir. 1998).

8

There are also no facts to support the proposition that plaintiff is attempting to bring a claim under the Federal Tort Claims Act. *See Newcombe v. United States*, 933 F.3d 915, 917 (8th Cir. 2019) (explaining that the FTCA "waives federal sovereign immunity for injuries caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable"). Finally, plaintiff has not established that the federal government has waived its immunity under 28 U.S.C. § 1346(a)(2), which "waives sovereign immunity where a plaintiff seeks less than $10,000 in damages for a constitutional violation." *See Aspen Composers' Conference v. Library of Congress, Cataloging in Publication Division*, 2013 WL 3716641, at *4 (D. Minn. 2013). In this case, plaintiff has not asserted a constitutional violation against the federal government, and has not stated the amount of damages she is seeking.

For all these reasons, plaintiff has failed to demonstrate that the United States has waived its sovereign immunity. As there is no waiver, sovereign immunity is intact, and the Court lacks subject matter jurisdiction over her claim. Therefore, the case must be dismissed without prejudice. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action").

### B. Failure to State a Claim Against the United States

Even if plaintiff had demonstrated the existence of subject matter jurisdiction, she has failed to state any sort of claim against the United States. As noted above, to state a claim, plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *See Ashcroft*, 556 U.S. at 679. That is, plaintiff must present factual allegations sufficient "to raise a right to relief above the speculative level." *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).

9

Here, not only has plaintiff failed to establish more than a "mere possibility of misconduct" by the United States, she has not demonstrated *any* possibility of misconduct. Aside from being named as defendant in the case caption, the United States is not mentioned again anywhere in the complaint. There is absolutely no indication whatsoever of a United States agency or official playing any role in plaintiff's eviction, which appears to be a matter embodied entirely in state law. Therefore, for this reason as well, plaintiff's case is subject to dismissal.

### C.  42 U.S.C. § 1983 Claim Against DSCC

Because plaintiff is a self-represented litigant, her complaint must be liberally construed so that it is considered within the proper legal framework. *See Solomon*, 795 F.3d at 787. *See also Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (explaining that when evaluating whether a self-represented plaintiff has asserted sufficient facts to state a claim, a pro se complaint, however inartfully pleaded, is held to less stringent standards than formal pleadings drafted by lawyers). Taking plaintiff's pro se status into consideration, the Court notes that even though the United States is listed as the defendant, plaintiff appears to be bringing a claim against DSCC for violations of a lease agreement, and for evicting her. Furthermore, plaintiff seems to be asserting that DSCC's actions violated her constitutional rights, making this a claim under 42 U.S.C. § 1983. *See Young v. Harrison*, 284 F.3d 863, 866 (8th Cir. 2002) ("Section 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right"). Even if the Court construes the complaint in this manner, however, it is still subject to dismissal.

### i.       DSCC is Not Alleged to Be a State Actor

In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged

wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz*, 601 F.3d at 848. With regard to the first element, a defendant can only be held liable pursuant to § 1983 for actions taken under color of state law. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law").

When a private party acts under color of state law, it can be held liable under 42 U.S.C. § 1983. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). However, a private party may only be held liable "if it is a willful participant in joint activity with the State or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

In this case, plaintiff has not alleged that DSCC is a state actor or acted under color of state law. There is no indication that it is a state agency; rather, she identifies it as "a non-profit organization." Further, plaintiff presents no facts showing that DSCC was "a willful participant in joint activity with the State or its agents," or came to a meeting of the minds with a state actor. At most, she has demonstrated that DSCC used a state procedure to evict her. However, simply going to court to utilize state law does not mean that DSCC acted under color of law. *See Higbee v. Starr*,

11

698 F.2d 945, 946 (8th Cir. 1983) (explaining that landlord's use of Arkansas eviction statute to evict a month-to-month tenant was not state action, even if state procedure was used improperly). Because plaintiff has not established that DSCC acted under color of state law, she has not stated a claim under 42 U.S.C. § 1983.

### ii.     DSCC is Not Alleged to Have Committed a Constitutional Violation

Even if DSCC had acted under color of state law, plaintiff has not presented facts showing that it violated any of her constitutional rights. *See Wong v. Minnesota Dep't of Human Servs.*, 820 F.3d 922, 934 (8th Cir. 2016) ("To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States"). In this case, plaintiff states that DSCC violated her lease agreement. Specifically, she contends that DSCC employees entered her apartment without notice; entered into a "fallacious contract" with a pest control company, even though there were no pests; and failed to maintain a functioning air conditioner. None of these allegations implicates one of plaintiff's constitutional rights. Rather, at most, they sound in state law claims of breach of contract or tort.

To the extent that plaintiff is accusing DSCC of violating her right to due process with regard to her eviction, the Court notes that she has not established a violation of the Fourteenth Amendment. The Fourteenth Amendment provides, in part, that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. For procedural due process claims, there is a two-step analysis: first, "whether there exists a liberty or property interest of which a person has been deprived," and second, if a liberty interest exists, "whether the procedures followed by the State were constitutionally sufficient." *Jenner v. Nikolas*, 828 F.3d 713, 716 (8th Cir. 2016). Before reaching the issue as to what process is due, a "plaintiff must first show [the] deprivation of a constitutionally protected life, liberty, or property interest." *See*

*Rochling v. Department of Veterans Affairs*, 725 F.3d 927, 931 (8th Cir. 2013). Unless there has been a constitutional deprivation, there is no need to determine what process is due. *See Singleton v. Cecil*, 155 F.3d 983, 987 (8th Cir. 1998) (explaining that to claim a due process violation, plaintiff has to be deprived of either life, liberty, or property, otherwise "it does not matter whether one has received due process or not").

Here, even assuming that plaintiff had a protected property interest in her apartment, she has not shown a lack of due process. To the contrary, her allegations, exhibits, and the Court's own review of her state court case indicate that plaintiff was given notice that her month-to-month lease was being terminated, that DSCC filed a petition for unlawful detainer, that a trial was held, and that DSCC received a judgment against plaintiff for possession of the apartment. Therefore, any due process claim is subject to dismissal. *See Rheuport v. Ferguson*, 819 F.2d 1459, 1466 (8th Cir. 1987) (determining that plaintiffs had not been denied due process after being evicted from mobile park, as "writ of eviction was obtained through normal channels, and [plaintiffs] had even exercised their right to challenge the action in state courts before termination"); and *Tymiak v. Omodt*, 676 F.2d 306, 308 (8th Cir. 1982) (determining that plaintiff had not been deprived of due process upon eviction, because the state district court proceedings "clearly afforded [plaintiff] due process of law").

For all these reasons, even if DSCC was assumed to be a defendant in this action, and assumed to be acting under color of law, plaintiff has failed to state a 42 U.S.C. § 1983 claim.

**D. Pre-Service Dismissal**

As set forth above, plaintiff has sued the United States for violations of her lease agreement and her eviction. The United States, however, has sovereign immunity from suit, and there is no indication of any waiver in this case. Because sovereign immunity is jurisdictional in nature, and

as the issue of jurisdiction can be raised at any time, by any party or the Court, plaintiff's claim against the United States must be dismissed. *See* Fed. R. Civ. P. 12(h)(3).

To the extent that DSCC can be treated as the defendant, plaintiff has not demonstrated that it acted under color of state law for purposes of 42 U.S.C. § 1983. Even if DSCC had acted under color of state law, plaintiff's factual allegations do not describe any constitutional violations. Therefore, any action against DSCC must be dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice. *See* Fed. R. Civ. P. 12(h)(3); and 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this _7th_ day of __October_, 2022.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE